UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** <br><br> COLLEEN MERRILL, <br><br> **Debtor.** | **Bankruptcy Case** <br> **No. 09-00921-JDP** |

_____

**MEMORANDUM OF DECISION**
_____

**Appearances:**

    Randal J. French, BAUER & FRENCH, Boise, Idaho.  Attorney for Debtor.
    Jeremy Gugino, Boise, Idaho.  Chapter 7 Trustee.

_____

*Introduction*

In the context of an exemption dispute in this bankruptcy case, the Court considers the application of Idaho's statute limiting wage garnishment.

On May 25, 2009, chapter 7[1] trustee Jeremy Gugino ("Trustee")

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 1

objected to the exemption claimed by Debtor Colleen Merrill in a savings account and checking account. Docket No. 32. Debtor filed a response to the objection, albeit somewhat tardily, on June 25, 2009. Docket No. 38. Trustee filed a brief in support of his objection, and noticed the matter for a hearing. Docket Nos. 40, 43. Thereafter Trustee filed an amended memorandum in support of his objection. Docket No. 47.

At the conclusion of the September 1, 2009 hearing, the Court took the issues under advisement. The Court has considered the submissions, testimony and evidence presented by the parties, the arguments of counsel, and the applicable law. This decision disposes of the issues.[2]

*Facts*

The facts are uncomplicated and not in dispute. Debtor and John Merril are married, though separated. In 1995, Debtor and John[3] moved from California to Boise. From approximately 1997-2001, John was

---

[2] This Memorandum constitutes the Court's findings and conclusions. Fed. R. Bankr. P. 7052; 9014.

[3] The Court refers to Mr. Merrill by his first name for convenience and clarity. No disrespect is intended.

MEMORANDUM OF DECISION - 2

employed by First Security Bank. During this time, he enrolled in and contributed to a company-sponsored 401(k) retirement plan. He later left the bank and took a job with North American Mortgage, a company that did not offer a 401(k) plan to its employees. Therefore, he rolled the monies on deposit in the 401(k) plan into an Individual Retirement Account ("IRA") maintained by The Vanguard Group. Ex. 1. The amount of the initial rollover was $4,110. *Id*.

John eventually left North American, and accepted a job with First Horizon. First Horizon offered a 401(k) plan to its employees, and John enrolled in and contributed to that plan. In 2006, John left First Horizon and went to work for Countrywide. He rolled his First Horizon 401(k) plan funds into the same Vanguard IRA that he had established using the proceeds of the First Security 401(k) plan. Ex. 2. The amount he rolled into the IRA this time was $30,171.57. *Id*.

Due to the slowing of the mortgage market, John's take home pay at First Horizon was drastically reduced. As a result, he elected to cash out the IRA and use the funds to help pay his living expenses. After having

MEMORANDUM OF DECISION - 3

thirty percent of the balance in the IRA account withheld to pay income taxes, on July 17, 2008, he deposited the remainder of those funds, amounting to $47,710.41, into a Wells Fargo Bank savings account. Both John's and Debtor's names appear as account holders. Exs. 3, 4. Based upon the evidence submitted at the hearing, it appears some funds had previously been deposited in the savings account, which were then commingled with the IRA proceeds.[4] Since July, 2008, John has periodically transferred money from the savings account to the joint checking account to pay living expenses. There record contains no evidence of whether Debtor has written any checks from their joint account.

On April 13, 2009, Debtor filed a chapter 7 petition. Docket No. 1. In her original schedule B, she did not list either Wells Fargo Account. *Id*. She amended schedule B on May 15, 2009, to show the accounts, listing the

---

[4] John testified that there was "a little bit" of money in the savings account when he deposited the IRA proceeds into the account. The savings account statement in Exhibit 3 indicates that the balance on the previous statement date was $1,985.48.

MEMORANDUM OF DECISION - 4

value of the checking account as $614.41 and the savings account as $20,754.59. Docket No. 24. On her amended schedule C filed the same day, Debtor claimed the Wells Fargo checking account exempt in the amount of $460.81, and the savings account exempt in the amount of $15,565.94. *Id*. These amounts reflect seventy-five percent of the balance in the accounts. Both of these exemptions were claimed pursuant to Idaho Code § 11-207.

On April 22, 2009, Wells Fargo issued three cashier's checks to Trustee in the amounts of $100, $1,243.67 and $19,979.59, together totaling $21,323.26.[5] Ex. 5. Trustee holds these funds pending the outcome of the exemption contest.

---

[5] There is a discrepancy in the amounts listed in amended schedule B, and the amounts received by Trustee. The difference is $45.74, $25.00 of which is attributable to a fee that Wells Fargo collected presumably for freezing the account and issuing the checks to Trustee. The remaining $20.74 difference is not explained in the record. Of course, the commencement of a case creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *Cogliano v. Anderson (In re Cogliano)*, 355 B.R. 792, 800-01 (9th Cir. BAP 2006); *In re Jackson*, 09.1 I.B.C.R. 14, 15 (Bankr. D. Idaho 2009). As the petition date controls the date property becomes part of the bankruptcy estate, the Court will utilize the figures in Debtors' amended schedules B and C.

MEMORANDUM OF DECISION - 5

There are two other material facts concerning the IRA and savings account. First, because no evidence was offered to the contrary, the Court presumes all funds in the IRA are derived from the 401(k) plan rollovers and dividends that were rolled back into the principal.[6] Second, after the funds from the IRA were deposited into the savings account in July 2008, no further deposits have been made to that account. Therefore, the only commingling of funds in that account occurred solely because there was a modest sum already present in the savings account at the time of the IRA deposit.

As noted above, Trustee has objected to Debtor's amended claims of exemption in the savings and checking accounts. Docket No. 32.

*Analysis and Disposition*

Upon commencement of a bankruptcy case, all property in which the debtor has a legal or equitable interest becomes property of the bankruptcy estate. 11 U.S.C. § 541(a). However, a debtor may exempt

---

[6] There is no evidence that Debtor independently made any contributions to the 401(k) plans, IRA or savings accounts.

MEMORANDUM OF DECISION - 6

certain types of property from the estate, limited to those exemptions permitted under Idaho law. *See* 11 U.S.C. § 522(b)(2); Idaho Code § 11-609. A debtor's entitlement to exemptions is determined as of the petition date. *Culver, L.L.C. v. Chiu (In re Chiu)*, 226 B.R. 743, 751 (9th Cir. BAP 2001); *In re Carlson*, ___ I.B.C.R. ___, 2009 WL 2589161 *2 (Bankr. D. Idaho Aug. 20, 2009). In Idaho, exemption statutes are to be liberally construed in favor of the debtor. *In re Kline*, 350 B.R. 497, 502 (Bankr. D. Idaho 2005) (citing *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001); *In re Koopal*, 226 B.R. 888, 890 (Bankr. D. Idaho 1998)). Finally, as the objecting party, Trustee bears the burden of proving that Debtor's claim of exemption is not proper. Rule 4003(c); *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n. 3 (9th Cir. 1999); *In re Katseanes*, 07.4 I.B.C.R. 79, 79 (Bankr. D. Idaho 2007).

By her exemption claim, Debtor contends that seventy-five percent of the funds in both the joint checking and savings accounts are exempt under the Idaho statute restricting wage garnishment, which provides, in relevant part:

**Restriction on garnishment – Maximum. –** (1)

MEMORANDUM OF DECISION - 7

> Except as provided in subsection (2) of this section, the maximum amount of the aggregate disposable earnings of an individual for any work week which is subjected to garnishment shall not exceed (a) twenty-five percent (25%) of his disposable earnings for that week, or (b) the amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage prescribed by 29 U.S.C.A. § 206(a)(1) in effect at the time the earnings are payable, whichever is less.

Idaho Code § 11-207. Idaho Code § 11-206 supplies three statutory definitions necessary for analysis of the statute here:

> **Definitions.** – For the purpose of section 11-207, Idaho Code, the term:
> 　　1. "Earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.
> 　　2. "Disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.
> 　　3. "Garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

MEMORANDUM OF DECISION - 8

Idaho Code § 11-206.

To determine if the funds qualify as exempt earnings under these statutes, it is first necessary to trace the path taken by these funds.

Initially, it appears undisputed that the bulk of the funds in the bank accounts originally represented wages earned by John from his employment. As such, seventy-five percent of these funds, in the hands of John's employer, would be protected by the garnishment exemption found in Idaho Code § 11-207.

From there, John's wages (represented by both the employers' and his own contributions) were deposited in his 401(k) plans. The funds in these accounts would have been exempt in full under a different provision of state law, Idaho Code § 11-604A. *See In re Carlson*, ___ I.B.C.R. ___, 2009 WL 2589161 *3; *In re Lowe*, 97.1 I.B.C.R. 24, 24 (Bankr. D. Idaho 1997). These 401(k) plan funds were then "rolled" into the Vanguard IRA.

This Court recently addressed the application of Idaho Code § 11-604A to IRAs. In *In re McClelland*, the Court explained that:

> For the purposes of this exemption statute,

MEMORANDUM OF DECISION - 9

> "employee benefit plan" is defined expansively to include "any plan or arrangement" that is "described" in one of six sections in the Internal Revenue Code. *See* Idaho Code § 11-604A(4)(b). Among the sections listed is § 408, which provides for the establishment and operation of individual retirement accounts.

*In re McClelland*, 08.1 I.B.C.R. 5, 7 (Bankr. D. Idaho 2008). Thus, it would appear that the funds in John's IRA would likewise be exempt pursuant to Idaho Code § 11-604A. Thereafter, however, the funds were withdrawn from the IRA and deposited into the joint savings account, and from time to time, monies were moved into the joint checking account.

The question presented by these facts is, since the funds were continuously exempt under either Idaho Code § 11-207 or § 11-604A until they were withdrawn from the IRA and deposited into the bank account, were the funds still protected from seizure by Trustee when Debtor's bankruptcy case was filed. The Court holds that they were not exempt.

There is no case law precisely on point in this District, and the decisions from other courts are of limited value, given that Idaho has opted out of the federal exemption scheme, and therefore this matter must be

MEMORANDUM OF DECISION - 10

determined solely by reference to Idaho statutory and legal authorities. There are, however, important clues in both the statutes and decisions of the Court to follow to the correct result. Indeed, the Court can confidently conclude that, once the money was withdrawn from the IRA, it was "washed" – as Trustee would describe it – of its exempt character as pension funds under Idaho Code § 11-604A. In *In re Carlson*, *supra*, this Court held:

> Once Debtors withdrew the funds from Ms. Carlson's 401(k) plan, those funds lost their exempt status. They remained nonexempt while on deposit in the U.S. Bank money market account which, despite its "401(k) Proceeds" label, is not protected under Idaho Code § 11-604A.

2009 WL 2589161 at *3.[7] Presumably, this case law leads Debtor to rely on the wage garnishment statute for protection.

---

[7] It is equally clear that had John removed the money from the 401(k) plan and moved it directly to the savings account, it would likewise have lost its exempt status under Idaho Code § 11-604A. *See In re Lowe*, 97.1 I.B.C.R. at 24 (considering funds withdrawn from a 401(k), the court stated that "[t]o qualify as exempt, the funds must either continue in an employee benefit plan or be paid to Debtor on account of one of the statutory conditions").

MEMORANDUM OF DECISION - 11

Debtor principally relies upon *In re Santillanes*, 05.4 I.B.C.R. 92 (Bankr. D. Idaho 2005).  In that case, the debtor had opened a "share savings account" with a credit union and deposited money into that account via payroll deductions.  When the debtor applied for a loan through the credit union, he was required to maintain a minimum balance in the share account, and he was restricted from withdrawing that amount until the loan was paid in full.  The only contributions the debtor made to the share account were through payroll deductions, and thus the source of those funds were clearly his wages.  He never contributed more to the account than that required by the credit union.  When he filed for bankruptcy, the debtor claimed seventy-five percent of the money in the share account exempt as wages under Idaho Code § 11-207. The Court allowed the exemption over the trustee's objection.

But the facts in *In re Santillanes* are distinguishable from those in the present contest.  In that case, the funds were directly deposited into the debtor's share account, where they remained.  The decision to allow the exemption in *In re Santillanes* is consistent with others by this Court.  For

MEMORANDUM OF DECISION - 12

example, in *In re Colling*, 03.1 I.B.C.R. 58 (Bankr. D. Idaho, 2003), the debtor deposited wages in a checking account and then claimed seventy-five percent of the checking account balance exempt in his bankruptcy case pursuant to Idaho Code § 11-207.  The trustee objected, but the Court found that "Idaho courts would allow an exemption in wages even where those earnings have been paid to the debtor and deposited in a bank account, so long as the debtor is able to trace the source of the exempt funds back to her wages."  *Id.* at 60.  The Court concluded that "Idaho Code § 11-207 may be used in a bankruptcy case to exempt a debtor's earnings.  Debtor may exempt seventy-five percent of the money on deposit in her checking account that is traceable to wages earned and paid as of the commencement of the case."  *Id.*[8]

---

[8] Debtor contends that *Hooper v. State of Idaho*, 908 P.2d 1252 (Id. Ct. App. 1995) likewise stands for the proposition that funds deposited into an account are exempt if they can be traced to wages.  Docket No. 49, p. 2.  This is incorrect.  In *Hooper*, the Idaho Court of Appeals denied an exemption claimed under Idaho Code § 11-207 by an inmate, because his earnings from working at the prison were commingled with money from an outside source, and no attempt to trace his inmate wages had been made.  The court did not decide whether the funds would have been exempt if they were traceable, and in fact, discussed the fact that there was authority going both ways on this question.  *Id*. at 1257-58.

MEMORANDUM OF DECISION - 13

Here, Debtor seeks to apply the holdings in *In re Santillanes* and *In re Colling* broadly, and to essentially allow the wage garnishment exemption to any funds that can eventually be traced back to wages.

There is precedent suggesting that the wage garnishment statute should not be applied to protect, for lack of a better term, "accumulated" funds.  *See In re Phelps*, 92 I.B.C.R. 67 (Bankr. D. Idaho 1992) (wages contributed to a 401(k) plan and rolled to an IRA held not exempt under Idaho Code § 11-207); *In re Wright* 84 I.B.C.R. 63 (Bankr. D. Idaho 1984) (funds held in a Keogh plan held not to be exempt under Idaho Code § 11-207).  However, a plain reading of Idaho's current wage garnishment statute reveals that the Idaho Legislature clearly intended it to apply to retirement and pension funds, under limited circumstances.

Recall, Idaho Code § 11-207 allows a garnishment of twenty-five percent of the "aggregate disposable earnings of an individual for any work week".  As noted above, the definition of "disposable earnings" focuses upon whatever part of the individual's "earnings" remain after legally required withholdings.  Idaho Code § 11-206(1).  The definition of

MEMORANDUM OF DECISION - 14

"earnings" is fairly broad, including "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, *and includes periodic payments pursuant to a pension or retirement program*". Idaho Code § 11-206(1) (emphasis supplied). Thus, it appears that wages invested in a pension or retirement program, though possibly exempt under Idaho Code § 11-604A, also retain their character as wages so long as distributions are taken periodically.

Unfortunately, the term "periodically" is not defined in the Idaho Code.[9] "To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme. If the statute uses a term which it does not define, the court gives that term its ordinary meaning." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999) (internal citations omitted). In order to determine the plain meaning of an undefined term, the court may utilize a dictionary

---

[9] Idaho Code § 28-9-109, dealing with secured transactions, provides that "periodic payments" includes "both recurring payments and scheduled future lump sum payments." However, use of that definition is limited by statute to Idaho Code § 28-9-109(d).

MEMORANDUM OF DECISION - 15

definition. *United States v. Buenting (In re Crystal Cascades Civil, LLC)*, ___ B.R. ___, 2009 WL 2135736 *4 (9th Cir. BAP June 18, 2009).

"Periodic payment" is defined as "one of a series of payments made over time instead of a one-time payment for the full amount." BLACKS LAW DICTIONARY 1244 (9th ed. 2009). Thus, under this definition, Idaho's wage garnishment statute only protects payments made from a pension or retirement plan if they are part of a series over time, and not, as here, liquidation in a wholesale fashion. Had the Idaho Legislature intended to protect all distributions from pension or retirement plans, such as lump sums withdrawn "early" from such plans, it could have said so. Instead, the reach of Idaho Code § 11-207 is limited to periodic payments from such plans.

Construing the statute plainly, the Court concludes that the funds at issue, representing the wholesale withdrawal of all amounts on deposit in the IRA, do not fit within Idaho Code § 11-206's definition of "earnings". Therefore, those funds are not protected by the wage garnishment statute from seizure and administration by Trustee.

MEMORANDUM OF DECISION - 16

*Conclusion*

Idaho's garnishment statute, Idaho Code § 11-207, only protects *periodic* payments from pension and retirement plans. Therefore, because the IRA at issue was liquidated via a one-time payment in the total amount on deposit, the funds in the bank accounts are not Debtor's earnings and are not exempt under Idaho's wage garnishment statute. Trustee's objection to Debtor's claim of exemption under Idaho Code § 11-207 will be sustained and Debtor's exemption claims disallowed by separate order.

Dated: October 13, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge